# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *For the Western District of New York*

———————————

**MAY 2017 GRAND JURY**
**(Impaneled  5/5/2017)**

**THE UNITED STATES OF AMERICA**

    **INDICTMENT**

    *-vs-*

**FRANK GIACOBBE**
(Counts 1, 2-13, 15-25, 27, 30-33, 36, 38-45,
47, 49, 50, 52, 56-62),
**PATRICK OGIONY**
(Counts 1, 12, 15-17, 20, 27-32, 34, 35, 38-49,
51, 59-62),
**KEVIN MORGAN**
(Counts 1, 11, 13, 15-17, 19, 20, 23-27, 30-33,
35, 37-40, 42, 44-47, 50, 52-55, 59, 61, 62), and
**TODD MORGAN**
(Counts 1, 14-17, 23-27, 30-32, 37-40, 42, 44,
45, 47, 54, 55, 59, 61, 62)

**Violations:**
Title 18, United States Code,
Sections 1349, 1343, 1344, and 2
(62 Counts and 2 Forfeiture Allegations)

### INTRODUCTION

#### The Grand Jury Charges That:

1.    At all times relevant to this Indictment:

    a.    Aurora Capital Advisors, LLC, based in Buffalo, New York, was a commercial real estate firm engaged in the business of brokering loans for borrowers seeking financing for multi-family properties such as apartment complexes.

b.      Defendant FRANK GIACOBBE owned and operated Aurora Capital Advisors, identifying himself as the Principal, and employing others to assist him in brokering, and attempting to broker, loans.

c.      Defendant PATRICK OGIONY was employed and worked for defendant GIACOBBE as Managing Director at Aurora Capital Advisors.

d.      Morgan Management, LLC ("Morgan Management"), based in Pittsford, New York, owned and operated a portfolio of residential and commercial real estate properties.

e.      Defendant KEVIN MORGAN was employed at Morgan Management, working as a Vice President of the company.

f.      Defendant TODD MORGAN was employed at Morgan Management, working as a Project Manager at the company.

g.      The Amherst Gardens Apartments ("Amherst Gardens") was a multi-family residential apartment complex located at 86 East Amherst Street, Buffalo, New York.

h.      Chesed Properties Buffalo, LLC ("Chesed Properties") was a limited liability company formed to purchase Amherst Gardens.

i.      The Avon Commons Apartments ("Avon Commons") was a multi-family residential apartment complex located at 597 Collins Street, Avon, New York.

j.      Morgan Avon Apartments, LLC ("Morgan Avon") was a limited liability company formed to purchase Avon Commons.

k.      The Eden Square Apartments ("Eden Square") was a multi-family residential apartment complex located at 9000 Old Station Road, Cranberry Township, Pennsylvania.

l.      Cranberry Vista Apartments, LLC was a limited liability company formed to purchase Eden Square.

m.      The Morgan Ellicott Apartments ("Morgan Ellicott") was a multi-family residential apartment complex located at 221 and 291 William Street, Buffalo, New York.

n.      Morgan Ellicott Apartments, LLC was a limited liability company formed to purchase Morgan Ellicott.

o.      The Rochester Village Apartments at Park Place ("Rochester Village") was a multi-family residential apartment complex located at 10100 Kettlecreek Drive, Cranberry Township, Pennsylvania.

p.      Park Place Pittsburgh, LLC ("Park Place") was a limited liability company formed to purchase Rochester Village.

q.      The Rugby Square Apartments ("Rugby Square") was a multi-family residential apartment complex located at 215 Dorchester Avenue, Syracuse, New York.

r.      Rugby Square, LLC was a limited liability company formed to purchase Rugby Square.

s.      The Reserve at Southpointe ("Southpointe") was a multi-family residential apartment complex located at 1000 Meadow Lane, Canonsburg, Pennsylvania.

t.      The Reserve at Southpointe, LLC was a limited liability company formed to purchase Southpointe.

u.      The limited liability companies (LLCs) that purchased each of the properties referenced above at paragraphs (g) through (t) were owned by other LLCs controlled or managed by one or more members of the conspiracy.

v.      The Federal Home Loan Mortgage Corporation, known as "Freddie Mac," and the Federal National Mortgage Association, known as "Fannie Mae," were government sponsored enterprises formed by the United States Congress to increase the amount of money available in the mortgage lending market.

w.      Fannie Mae and Freddie Mac worked with certain approved financial institutions which issued loans, which loans the financial institutions then sold to Fannie Mae and Freddie Mac, while continuing to service the loans on behalf of Fannie Mae and Freddie Mac.

x.      Arbor Commercial Mortgage, LLC ("Arbor") was a commercial real estate financing company based in Uniondale, New York and was approved to sell and service loans on behalf of Fannie Mae and Freddie Mac. Entities such as Arbor that sell and service loans on behalf of Fannie Mae and Freddie Mac are known within the commercial and multi-family mortgage industry as "seller-servicers." The seller-servicers issue the loans, which are then purchased by Fannie Mae and Freddie Mac. The seller-servicers then continue to service the loans after the sales to Fannie Mae and Freddie Mac.

y.      Berkadia Commercial Mortgage, LLC ("Berkadia") was a commercial real estate financing company based in Horsham, Pennsylvania and acted as a seller-servicer on behalf of Fannie Mae and Freddie Mac.

z.      UBS Securities LLC ("UBS") was a financial institution based in New York, New York, and was a wholly owned subsidiary of UBS Group AG, a Swiss global financial services company.

aa.     M&T Bank was a financial institution based in Buffalo, New York.

bb.     Evans Bank, N.A. was a financial institution based in Hamburg, New York.

cc.     Arbor, Berkadia, M&T Bank and Evans Bank were financial institutions, as that term was defined in Title 18, United States Code, Section 20.

dd.     Colliers International ("Colliers") was a real estate services company that, among other things, appraised multi-family properties.

ee.     CBRE Group, Inc. ("CBRE") was a real estate services company that, among other things, appraised multi-family properties.

ff.     A "rent roll" was a spreadsheet listing, among other things: (1) all of the tenants in a multi-family property during a specific time frame, (2) the amount of rent paid by each tenant; and (3) the total rental income for the property during the time frame. The rent roll often also included the date the tenant began occupying the apartment listed on the rent roll.

gg.     A "trailing twelve statement," commonly referred to as a "T12 statement" set forth the income for a property each month for the preceding twelve months.

hh.     The "debt service coverage ratio" ("DSCR") for a property was a ratio of a property's income to its debt obligations, and was an indicator of whether a property could sustain its debt based on its income. A lender relied upon the DSCR in determining whether it would issue a loan, and thereafter continued to rely upon it in assessing a borrower's ability to meet its obligations going forward. If a loan failed to meet a certain DSCR after closing, the loan could be considered in default, providing the lender with options to protect itself.

## THE MULTI-FAIMLY PROPERTY MORTGAGE LENDING PROCESS

2.     An entity could acquire a multi-family property by way of new construction or by purchasing an existing multi-family property. New construction could be funded with a short-term construction loan intended to finance the property during the period of construction and until its occupancy was considered "stabilized." Whether a new or existing property was considered "stabilized" varied across different markets and time-frames, but generally required occupancy in excess of ninety percent.

3.     Once a property was stabilized, property owners could seek permanent financing of the property. Financial institutions issuing permanent financing for multi-family properties would generally loan only approximately eighty percent of the value of the properties.

4.     Before a financial institution determined whether it would issue a loan on a multi-family property, it typically evaluated various factors, including determining the property's value by using the property's income. In conducting its evaluation, a lender relied on representations made by a potential borrower concerning a property's income.

## COUNT 1

### (Conspiracy to Commit Wire Fraud and Bank Fraud)

### The Grand Jury Further Charges That:

1.     The allegations contained in the Introduction of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

## THE CONSPIRACY

2.      Beginning in or before March 2011, the exact date being unknown to the Grand Jury, and continuing to in or about June 2017, in the Western District of New York, and elsewhere, the defendants, FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, and TODD MORGAN, did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown to the Grand Jury, to:

a.      devise a scheme and artifice to defraud financial institutions and government sponsored enterprises and for obtaining money and property from financial institutions and government sponsored enterprises by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice, to transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, and the scheme and artifice affected financial institutions, in violation of Title 18, United States Code, Section 1343; and

b.      knowingly execute a scheme and artifice to defraud financial institutions and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## OBJECTS OF THE CONSPIRACY

3.     It was an object of the conspiracy to induce financial institutions to issue mortgage loans based on false representations, which loans the institutions would not have issued, or would have issued on different terms, had the representations been truthful.

4.     It was a further object of the conspiracy to provide the institutions servicing the mortgage loans with false information to conceal the misrepresentations that had induced the lenders to issue the loans, and to conceal the actual financial statuses of the properties so the lenders would continue to provide additional loans

5.     It was a further object of the conspiracy to carry out and to execute the above-listed objects for the personal gain, benefit, profit, advantage, and accommodation of defendants FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, and TODD MORGAN.

## MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE ACCOMPLISHED:

6.     The objects of the conspiracy were accomplished through the following means, among others:

a.     Defendant FRANK GIACOBBE worked as a mortgage broker on behalf of Morgan Management, LLC, defendants KEVIN MORGAN and TODD MORGAN, and other co-conspirators known and unknown to the Grand Jury, to obtain loans for multi-family properties.

b.     Defendants FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, and TODD MORGAN, and other co-conspirators, known and unknown to the Grand Jury, provided false information to financial institutions and government sponsored

enterprises that overstated incomes of properties and thereby induced financial institutions to issue loans: (1) for greater values than the financial institutions would have authorized had they been provided with truthful information; and (2) that the financial institutions would not have issued at the time of issuance had they been provided with truthful information.

c.      Defendants FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, and TODD MORGAN, and other co-conspirators, known and unknown to the Grand Jury, employed various mechanisms to mislead inspectors, appraisers, financial institutions and government sponsored enterprises with respect to the occupancy of properties.

d.      Defendants FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN, and other co-conspirators, known and unknown to the Grand Jury, made misrepresentations and engaged in conduct designed to conceal from lending financial institutions that the defendants and other co-conspirators were obtaining cash from the loan proceeds which cash was not used to purchase and maintain the premises. The defendants did so by, at times, providing false documentation of obligations purportedly associated with the properties, and by misrepresenting the actual purchase prices of properties.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

7.      In furtherance of the conspiracy, the following acts, among others, were committed in the Western District of New York and elsewhere:

**Morgan Ellicott**

a.     In or about March 2011, defendant FRANK GIACOBBE conspired with others known to the Grand Jury to cause a fictitious contract to be presented to Evans Bank, stating that Morgan Ellicott Apartments, LLC had contracted to purchase Morgan Ellicott for $5 million when, in fact, the purchase price was $3.1 million. Evans Bank thereafter issued a $4.5 million loan for the purchase of Morgan Ellicott.

b.     In or about March 2013, in connection with efforts to refinance Morgan Ellicott, defendant FRANK GIACOBBE conspired with others known to the Grand Jury to present to UBS documents identifying a false and nonexistent $3.5 million loan purportedly owed on Morgan Ellicott. Thereafter, on April 30, 2013, UBS issued an $8.5 million loan.

c.     Defendant FRANK GIACOBBE received a "broker fee payment" of $85,000 from the proceeds of the loan issued by Evans Bank, and on or about May 3, 2013, and May 7, 2013, received payments of $85,000 and $50,000, respectively, from the proceeds of the loan issued by UBS.

**Rugby Square**

d.     On or about February 22, 2012, Rugby Square, LLC acquired Rugby Square with a $5.56 million loan from M&T Bank, which was based on an appraised value of $7.52 million. Between or about September 18, 2012, and October 11, 2012, defendant FRANK GIACOBBE e-mailed false and inflated income documents to Colliers and Berkadia in connection with efforts by Rugby Square, LLC to refinance Rugby Square.

e.     Thereafter, on or about October 25, 2012, Colliers issued an appraisal, based in part on false information provided by defendant FRANK GIACOBBE valuing the property at $13 million.

f.      On or about December 20, 2012, Berkadia issued a $9 million loan to refinance the property which loan was subsequently purchased by Freddie Mac.

g.      On or about December 20, 2012, December 21, 2012, and January 2, 2013, defendant FRANK GIACOBBE received payments of $90,000, $50,000, and $90,000, respectively, from the proceeds of the $9 million loan.

## Amherst Gardens

h.      On or about June 30, 2014, Chesed Properties acquired Amherst Gardens for a purchase price of $8.57 million with a $7.868 million loan from Arbor. Between or about May 12, 2015, and July 21, 2015, defendants FRANK GIACOBBE and PATRICK OGIONY created false and inflated income documents, including T12s and rent rolls, and provided such false documents to Arbor in connection with efforts to refinance Amherst Gardens.

i.      On or about September 17, 2014, Colliers issued an appraisal, based in part on false information provided by defendants FRANK GIACOBBE and PATRICK OGIONY, valuing the property at $14.7 million.

j.      On or about September 30, 2014, Arbor issued an $11 million loan to refinance the property which loan was subsequently purchased by Fannie Mae.

k.      On or about September 30, 2014, defendant FRANK GIACOBBE received a payment of $110,000 from the proceeds of the $11 million loan.

**Avon Commons**

l.      Between on or about October 6, 2014, and on or about October 7, 2014, in connection with an effort to obtain refinancing from Arbor for Avon Commons, defendant FRANK GIACOBBE created and conspired to create a false and fraudulent payoff letter, which was provided to Arbor, and which falsely stated that Morgan Avon owed $1,353.856.02 to "United Income Partner's Fund 11% Notes Fund LLC," when in fact, no such debt existed.

m.      On or about December 9, 2014, Arbor issued a $6.3 million loan, the amount of which was based in part on the misrepresentation that Morgan Avon was indebted to United Income Partner's Fund 11% Notes Fund LLC in the amount of $1,371,316.67, and would use the proceeds of the loan to pay off that debt.   Freddie Mac subsequently purchased the loan from Arbor.

n.      On or about December 9, 2014, defendant FRANK GIACOBBE received $63,000 in broker's fees from the proceeds of the $6.3 million loan.


**Rochester Village**

o.      Between on or about October 27, 2014, and on or about April 6, 2015, defendants, FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, and TODD MORGAN, in connection with efforts to obtain financing for Rochester Village, conspired to inflate storage income, falsify rent rolls, produce false brochures, and falsely report apartment units as occupied before the town planning and development board issued certificates of occupancy allowing those units to be occupied.

p.      Between or about January 14, 2015, and January 19, 2015, defendants FRANK GIACOBBE, KEVIN MORGAN, and TODD MORGAN, in connection with an inspection related to the effort to obtain financing for Rochester Village, staged the interior of an unoccupied unit to make it appear occupied, and as to other unoccupied units, turned radios on in the units and placed mats and shoes outside apartment doors to mislead inspectors into believing that the units were occupied.

q.      On or about May 5, 2015, Colliers issued an appraisal, based in part on false and fraudulent information provided by the defendants, valuing the property at $64 million.

r.      On or about May 12, 2015, Berkadia issued a $45.79 million loan which loan was subsequently purchased by Freddie Mac.

s.      On or about May 12, 2015, defendant FRANK GIACOBBE received a payment of $460,000 from the proceeds of the $45.79 million loan.

## Southpointe

t.      Between or about April 10, 2015, and March 29, 2016, defendants, FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, and TODD MORGAN, in connection with efforts to obtain financing from Arbor for Southpointe, conspired to inflate the number of storage units and parking spaces available, inflate storage and other income, and falsify rent rolls.

u.      On or about May 9, 2016, CBRE issued an appraisal based in part on false information provided by the defendants, valuing the property at $60.5 million.

v.      On or about June 27, 2016, Arbor issued a $45 million loan which loan was subsequently purchased by Freddie Mac.

w.      On or about June 27, 2016, defendant FRANK GIACOBBE received a payment of $337,500 from the proceeds of the $45 million loan.

x.      In or about May 2017, the defendants FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, and TODD MORGAN conspired to create a false and fictitious rent roll and T12 statement in connection with an inspection to be conducted by Arbor related to the inclusion of the $45 million Southpointe loan in a mortgage-backed security.

### Eden Square

y.      Between or about October 24, 2016, and December 31, 2016, the defendants FRANK GIACOBBE, PATRICK OGIONY, and KEVIN MORGAN, in connection with efforts to obtain financing from Berkadia for Eden Square, falsified rent rolls and T12s, altered lease contracts to misstate rents and fees, and provided them to Berkadia.

z.      On or about October 24, 2016, in order to falsify radon testing required by Berkadia, defendant FRANK GIACOBBE instructed defendant KEVIN MORGAN to place a radon detection canister in a vacant unit on the top floor of the building with the window cracked during radon testing, despite instructions from the radon testing company to place the canisters only in ground floor units.

aa.      Between on or about November 15, 2016, and on or about November 16, 2016, defendants FRANK GIACOBBE and PATRICK OGIONY provided false documents to Freddie Mac and Berkadia.

bb.      On or about November 18, 2016, CBRE issued an appraisal, based in part on false information provided by the defendants, valuing the property at $54 million.

cc.     On December 21, 2016, Berkadia issued a $42 million loan which loan was subsequently purchased by Freddie Mac.

dd.     On or about December 21, 2016, defendant FRANK GIACOBBE received a payment of $210,000 from the proceeds of the $42 million loan.

ee.     On or about December 31, 2016, defendant FRANK GIACOBBE caused Freddie Mac to be provided with a false and inflated rent roll for Eden Square.

ff.     In or about early March 2017, an employee of Eden Square, who was unaware of the scheme to defraud, provided an inspector conducting a pre-securitization inspection on behalf of Wells Fargo, the master servicer for a securitized package of loans in which Eden Square was to be included, with an accurate rent roll showing the property less than seventy percent occupied. On or about March 15, 2017, defendant KEVIN MORGAN sent an e-mail to Berkadia, attempting to explain diminished occupancy rates between the December 2016 loan closing and March 2017.

**All in violation of Title 18, United States Code, Section 1349.**

**COUNTS 2-55**
**(Wire Fraud)**
**The Grand Jury Further Charges That:**

1.     The allegations contained in the Introduction and Count 1 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.     Beginning in or before March 2011, the exact date being unknown to the Grand Jury, and continuing to in or about June 2017, in the Western District of New York, and elsewhere, the defendants, FRANK GIACOBBE, PATRICK OGIONY, KEVIN

MORGAN, and TODD MORGAN, did devise, and intend to devise, a scheme and artifice to defraud financial institutions and government sponsored enterprises and for obtaining money and property from financial institutions and government sponsored enterprises by means of materially false and fraudulent pretenses, representations and promises, and the scheme and artifice affected financial institutions.

3.    On or about the dates set forth below, in the Western District of New York, and elsewhere, for the purpose of executing the scheme and artifice, the defendants set forth below, did transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds as set forth below:

| RUGBY SQUARE | | | |
|---|---|---|---|
| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
| 2 | 09/04/2012 | FRANK GIACOBBE | E-mail to Rugby Square property manager stating that a false and inflated rent roll was the "updated rent roll that we are moving forward with (sic)." |
| 3 | 09/18/2012 | FRANK GIACOBBE | E-mail to Colliers employees in Columbus, Ohio attaching a false Rugby Square rent roll and a false Rugby Square T12 statement to Colliers. |
| 4 | 10/11/2012 | FRANK GIACOBBE | E-mail to Berkadia containing a certification by a co-conspirator of a false Rugby Square rent roll. |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **5** | 12/05/2013 | FRANK GIACOBBE | E-mail to a co-conspirator's employee asking whether the co-conspirator had been providing the loan servicer with "regular" numbers or "inflated" numbers for Rugby Square. |
| **AVON COMMONS** | | | |
| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
| **6** | 10/06/2014 | FRANK GIACOBBE | E-mail to a co-conspirator, known to the Grand Jury, with a payoff letter for Avon Commons for a fictitious debt to a Morgan Management-related entity, Morgan 11% Notes Fund, LLC |
| **7** | 10/06/2014 | FRANK GIACOBBE | After a co-conspirator, known to the Grand Jury, replied to the e-mail set forth in Count 6 stating that if the debt to a Morgan Management-related entity was not recorded it would be "considered a cash out" "and "we would get f****d," defendant GIACOBBE responded with an e-mail stating, "Ok. Let me see what I can do." |
| **8** | 10/07/2014 | FRANK GIACOBBE | E-mail to the co-conspirator referenced in Counts 6 and 7, stating, "Call me back as soon as possible." |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **9** | 10/07/2014 | FRANK GIACOBBE | E-mail to the co-conspirator referenced at Counts 6 through 8, attaching a false and altered payoff letter for Avon Commons, replacing the name Morgan 11% Notes Fund, LLC with United Income Partners Fund 11% Notes Fund, LLC. |

**ROCHESTER VILLAGE**

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **10** | 10/27/2014 | FRANK GIACOBBE | E-mail to Colliers attaching a false and inflated Rochester Village operating budget, T12 statement, and rent roll. |
| **11** | 10/30/2014 | FRANK GIACOBBE, KEVIN MORGAN | E-mail to defendant FRANK GIACOBBE forwarding a true and accurate T12 income statement that defendant KEVIN MORGAN had received earlier that day from a Morgan Management employee. |
| **12** | 10/30/2014 | FRANK GIACOBBE, PATRICK OGIONY | E-mail to defendant OGIONY forwarding the true and accurate T12 statement referenced in Count 11. |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 13 | 10/28/2014 | FRANK GIACOBBE, KEVIN MORGAN | E-mail to defendant KEVIN MORGAN attaching a fraudulent and false and inflated "pro forma" document listing several categories of income and expenses for Rochester Village, including $72,900 in annual income for "storage space." The pro forma indicated that the $72,900 in income came from 180 storage units. |
| 14 | 10/29/2014 | TODD MORGAN | E-mail forwarding an e-mail from the Rochester Village property manager stating that the property had 45 storage units. |
| 15 | 10/29/2014 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | E-mail to defendant TODD MORGAN, copying defendants KEVIN MORGAN and PATRICK OGIONY, responding to the e-mail referenced at Count 14 and asking "where did 72k come from on the proforma." |
| 16 | 10/29/14 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | E-mail to defendant FRANK GIACOBBE, responding to the e-mail referenced at Count 15, stating that the "72k" on the Rochester Village pro forma came from "magic". |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **17** | 10/29/2014 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | E-mail to defendant KEVIN MORGAN, copying defendants TODD MORGAN and PATRICK OGIONY, stating, "Guys now is not the time for the TRUTH!" |
| **18** | 11/05/2014 | FRANK GIACOBBE | E-mail to a representative of an investor falsely stating that Rochester Village had 180 storage units. |
| **19** | 11/18/2014 | FRANK GIACOBBE,<br><br>KEVIN MORGAN | E-mail to defendant FRANK GIACOBBE attaching conditional certificate of occupancy for Rochester Village construction building 19 restricting occupancy to only four apartment units and some common areas. |
| **20** | 11/18/2014 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN | E-mail to defendant KEVIN MORGAN, copying defendant PATRICK OGIONY, stating "I see white out in our future." |
| **21** | 11/20/2014 | FRANK GIACOBBE | E-mail to Colliers falsely stating that Rochester Village "became one hundred percent occupied the month of October" and attaching a false and inflated T12 income statement. |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **22** | 11/24/2014 | FRANK GIACOBBE | E-mail to a co-conspirator regarding Pizza Joe's, which was identified as occupied in a rent roll. |
| **23** | 12/11/2014 | FRANK GIACOBBE, KEVIN MORGAN, TODD MORGAN | E-mail to defendant KEVIN MORGAN, copying defendant TODD MORGAN, stating that if the lender found out that Rochester Village did not have certificates of occupancy despite defendant FRANK GIACOBBE's representations that the property was one hundred percent leased, the lender would not close and stating, "I've tried everything so I suggest we jam it at the end and hope they don't notice." |
| **24** | 01/19/2015 | FRANK GIACOBBE, KEVIN MORGAN, TODD MORGAN | E-mail to the Rochester Village property manager, copying defendants FRANK GIACOBBE and TODD MORGAN, asking whether radios left on during the January 14, 2015, inspection were still audible and whether mats were still in the hallways. |
| **25** | 01/19/2015 | FRANK GIACOBBE, KEVIN MORGAN, TODD MORGAN | E-mail to defendant KEVIN MORGAN, copying defendant FRANK GIACOBBE, and identifying three units in which radios had been left on after conspirators staged apartments to appear occupied during an inspection. |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **26** | 03/24/2015 | KEVIN MORGAN, TODD MORGAN | E-mail to a Rochester Village property manager, copying defendant TODD MORGAN, asking the property manager to arrange for cars to be parked in the building 1000 parking garage. |
| **27** | 03/24/2015 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | E-mail to defendants OGIONY and KEVIN MORGAN, copying defendant GIACOBBE, attaching a true rent roll for Rochester Village. |
| **28** | 03/24/2015 | PATRICK OGIONY | E-mail to Berkadia attaching false and altered lease contracts. |
| **29** | 03/24/2015 | PATRICK OGIONY | E-mail to Berkadia attaching false and altered lease contracts. |
| **30** | 03/24/2015 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | E-mail to defendants KEVIN MORGAN and TODD MORGAN, copying defendant GIACOBBE, requested a copy of the Rochester Village marketing brochure without reference to "free cable." |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **31** | 03/25/2015 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | E-mail to defendants GIACOBBE and OGIONY, copying defendant KEVIN MORGAN, attaching a fraudulent Rochester Village marketing brochure without reference to free cable. |
| **32** | 03/30/2015 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | E-mail to defendants KEVIN MORGAN and TODD MORGAN, copying defendant FRANK GIACOBBE, attaching a false and inflated rent roll. |
| **33** | 03/31/015 | FRANK GIACOBBE,<br><br>KEVIN MORGAN | E-mail to defendant FRANK GIACOBBE with a list of apartments identified by the Rochester Village property manager as vacant but identified as leased or occupied on the rent roll. |
| **34** | 04/02/2015 | PATRICK OGIONY | E-mail to Berkadia containing a false and inflated T12 income statement and a false and inflated rent roll. |

| SOUTHPOINTE | | | |
|---|---|---|---|
| **COUNT** | **DATE** | **DEFENDANT(S)** | **DESCRIPTION OF WIRE COMMUNICATION** |
| **35** | 04/10/2015 | PATRICK OGIONY, KEVIN MORGAN | E-mail to defendant KEVIN MORGAN asking for removal of "'Rent Inlcudes: Cable TV'" from Southpointe web page and removal of "Cable Included" from the Southpointe website's "features and amenities." |
| **36** | 04/10/2015 | FRANK GIACOBBE | E-mail from defendant GIACOBBE replying to the e-mail set forth above at Count 35, stating "BOOM". |
| **37** | 04/10/2015 | KEVIN MORGAN, TODD MORGAN | E-mail to defendant TODD MORGAN regarding free cable advertised on Southpointe's website, responding to the e-mails referenced at Counts 35 and 36, stating, "Todd wtf. This needs to be changed everywhere." |
| **38** | 04/10/2015 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | E-mail to defendant KEVIN MORGAN, copying defendants TODD MORGAN and PATRICK OGIONY, responding to the e-mails referenced at Counts 35 to 37, stating: "Guys we need to be on our A Game to get max dollars." |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **39** | 04/11/2015 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | E-mail to defendants FRANK GIACCOBE and KEVIN MORGAN, copying defendant PATRICK OGIONY, responding to the e-mails referenced at Counts 35 to 38, stating, "I've removed 'cable included' from the Morgan communities website. I'll try to remove it from as many [ ] as I can." |
| **40** | 04/13/2015 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | E-mail to defendants FRANK GIACCOBE and KEVIN MORGAN, copying defendant PATRICK OGIONY, responding to the e-mails referenced at Counts 35 to 39, stating: "Update: I've been told items involving cable have been removed for Southpointe on the websites." |
| **41** | 11/03/2015 | FRANK GIACOBBE,<br><br>PATRICK OGIONY | E-mail to a co-conspirator, copying defendant FRANK GIACOBBE, providing false and inflated information about the number of parking spots and storage spaces at the property. |
| **42** | 03/29/2016 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | E-mail to defendants FRANK GIACOBBE, KEVIN MORGAN and PATRICK OGIONY forwarding an e-mail from the Southpointe property manager attaching a document with rental information for the property stating that fewer than twenty storage units were occupied. |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **43** | 03/29/2016 | FRANK GIACOBBE, PATRICK OGIONY | E-mail to defendant PATRICK OGIONY instructing defendant PATRICK OGIONY to fill out a Southpointe rental information document "to match our economics." |
| **44** | 05/05/2017 | FRANK GIACOBBE, KEVIN MORGAN, TODD MORGAN, PATRICK OGIONY | E-mail to defendants FRANK GIACOBBE, TODD MORGAN and PATRICK OGIONY attaching a true rent roll showing 84 percent occupancy, reporting that Arbor was scheduling an annual inspection, and stating "we are at 84% so we need to discuss a game plan." |
| **45** | 05/15/2017 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | E-mail to defendants KEVIN MORGAN and TODD MORGAN, copying defendant FRANK GIACOBBE, attaching a false and inflated T12 statement and a false and inflated rent roll "for servicing" of the loan. |
| **46** | 05/18/2017 | KEVIN MORGAN, PATRICK OGIONY | E-mail to defendant PATRICK OGIONY attaching a true and accurate rent roll. |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **47** | 05/18/2017 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | E-mail to defendants KEVIN MORGAN and FRANK GIACOBBE, copying defendant TODD MORGAN, attaching a false and inflated rent roll. |

### AMHERST GARDENS

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **48** | 07/06/2015 | PATRICK OGIONY | E-mail to CBRE containing a false T12 statement for Amherst Gardens. |
| **49** | 07/21/2015 | FRANK GIACOBBE, PATRICK OGIONY | E-mail to defendant FRANK GIACOBBE and to a co-conspirator with a false and inflated rent roll for Amherst Gardens. |

### EDEN SQUARE

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **50** | 10/24/2016 | FRANK GIACOBBE, KEVIN MORGAN | E-mail to defendant KEVIN MORGAN with instructions to place a radon detection canister in a vacant unit on the top floor of the building "with the window slightly cracked like a half an inch" despite instructions from the radon testing company to place the canisters only in ground floor units. |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **51** | 11/16/2017 | PATRICK OGIONY | E-mail to Berkadia attaching false and altered lease contracts. |
| **52** | 03/15/2017 | FRANK GIACOBBE, KEVIN MORGAN | E-mail to defendant FRANK GIACOBBE and another co-conspirator, known to the Grand Jury, proposing how to explain to Berkadia the number of vacancies after an Eden Square employee gave an inspector on site an accurate rent roll showing the property less than 70 percent occupied despite the loan having closed in December 2016 with false and inflated rent rolls reporting greater than 95 percent occupancy. |
| **53** | 03/15/2017 | KEVIN MORGAN | E-mail to Berkadia attempting to explain the current occupancy at Eden Square. |

**NON-PROPERTY SPECIFIC**

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **54** | 04/07/2016 | KEVIN MORGAN, TODD MORGAN | E-mail to Morgan Management personnel, copying defendant TODD MORGAN, stating, "We should never send in financials that show DCR [DSCR] below where we need to be based on the loan docs." |

| COUNT | DATE | DEFENDANT(S) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| **55** | 04/07/2016 | KEVIN MORGAN,<br><br>TODD MORGAN | E-mail to Morgan Management personnel, copying defendant TODD MORGAN, stating, "To reiterate, though, we should never put ourselves in this position. DSCR should be reviewed prior to sending in and if we do not meet the requirement, we need to make adjustments so we do meet it." |

**All in violation of Title 18, United States Code, Section 1343.**

## COUNTS 56-62
### (Bank Fraud)
### The Grand Jury Further Charges That:

1.     The allegations contained in the Introduction and Counts 1 through 55 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.     On or about the dates set forth below, in the Western District of New York and elsewhere, the defendants set forth below did knowingly execute, and attempt to execute, a scheme and artifice to defraud financial institutions and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, financial institutions by means of materially false and fraudulent pretenses, representations and promises, with respect to the loans set forth below by date, property, borrower, loan amount, and financial institution:

| Count | Date | Defendant(s) | Property | Borrower | Loan Amount | Financial Institution |
|---|---|---|---|---|---|---|
| **56** | 12/20/2012 | FRANK GIACOBBE | Rugby Square | Rugby Square, LLC | $9,000,000 | Berkadia Commercial Mortgage, LLC |
| **57** | 04/30/2013 | FRANK GIACOBBE | Morgan Ellicott | Morgan Ellicott Apartments, LLC | $8,500,000 | UBS Real Estate Securities, Inc. |
| **58** | 12/9/2014 | FRANK GIACOBBE | Avon Commons | Morgan Avon Apartments, LLC | $6,300,000 | Arbor Commercial Mortgage, LLC |
| **59** | 05/12/2015 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | Rochester Village | Park Place Pittsburgh, LLC | $45,791,000 | Berkadia Commercial Mortgage, LLC |
| **60** | 09/30/2015 | FRANK GIACOBBE,<br><br>PATRICK OGIONY | Amherst Gardens | Chesed Properties Buffalo, LLC | $11,000,000 | Arbor Commercial Funding, LLC |
| **61** | 06/27/2016 | FRANK GIACOBBE,<br><br>PATRICK OGIONY,<br><br>KEVIN MORGAN,<br><br>TODD MORGAN | Southpointe | The Reserve at Southpointe, LLC | $45,000,000 | Arbor Commercial Mortgage, LLC |

| Count | Date | Defendant(s) | Property | Borrower | Loan Amount | Financial Institution |
|-------|------|--------------|----------|----------|-------------|----------------------|
| 62 | 12/21/2016 | FRANK GIACOBBE, PATRICK OGIONY, KEVIN MORGAN, TODD MORGAN | Eden Square | Cranberry Vista Apartments, LLC | $42,000,000 | Berkadia Commercial Mortgage, LLC |

**All in violation of Title 18, United States Code, Sections 1344 and 2.**

## FIRST FORFEITURE ALLEGATION

### The Grand Jury Alleges That:

Upon conviction of the offenses alleged in Counts 1 and 56-62 of this Indictment, or any one of them, the defendant, FRANK GIACOBBE, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction, including, but not limited to:

### MONETARY AMOUNT

The sum of one million six hundred seventy-five thousand five hundred dollars ($1,675,500) United States currency.

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

## SECOND FORFEITURE ALLEGATION

### The Grand Jury Further Alleges That:

Upon conviction of the offenses alleged in Counts 1, 2-13, 15-25, 27, 30-33, 36, 38-45, 47, 49, 50, 52, and 56-62 of this Indictment, or any one of them, the defendant, FRANK GIACOBBE, shall forfeit to the United States of America any property constituting, or derived from proceeds obtained directly or indirectly, as a result of such offense of conviction, including, but not limited to:

### MONETARY AMOUNT

The sum of one million six hundred seventy-five thousand five hundred dollars ($1,675,500) United States currency.

**All pursuant to Title 18, United States Code, Section 982(a)(2).**

**DATED**:  Buffalo, New York, May 22, 2018.

JAMES P. KENNEDY, JR.
United States Attorney


BY:     S/JOHN D. FABIAN
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5819
john.fabian@usdoj.gov


A TRUE BILL:


S/FOREPERSON