UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,


      v.                                         18-CR-108-EAW

ROBERT MORGAN, FRANK GIACOBBE,
TODD MORGAN, AND MICHAEL TREMITI,


                                     Defendants.

In Re: Sale of 1200-A Penfield Road, Town of Penfield,
Monroe County, New York

_____

**STIPULATION BY AND AMONG THE UNITED STATES OF AMERICA, ROBERT MORGAN, TODD MORGAN, AND ELLISON HEIGHTS APARTMENTS LLC**

With regard to the United States of America's forfeiture allegations against the premises, buildings, appurtenances, improvements and real property located at 1200-A Penfield Road, Town of Penfield, Monroe County, New York, as more particularly described on Exhibit A (attached hereto), the United States of America, Robert Morgan, Todd Morgan, and Ellison Heights Apartments LLC, owner of the real property located at 1200-A Penfield Road, Town of Penfield, Monroe County, New York, (collectively, the "Parties") hereby stipulate as follows:

1.   WHEREAS the real property located at 1200-A Penfield Road, Town of Penfield, Monroe County, New York, known as Ellison Heights Apartments (the "Property") is listed as subject to the criminal forfeiture allegations in the above-captioned proceeding 18-CR-108-EAW (Dkt. 42), incorporated herein by reference (the "Superseding Indictment").

2.   WHEREAS Ellison Heights Apartments LLC (the "Owner") owns the Property.

3.  WHEREAS there is no court order authorizing the United States of America to seize or lawfully restrain the sale, transfer, or disposal of the Property.

4.  WHEREAS the Property is not subject to any civil, criminal, or ancillary forfeiture action other than the Superseding Indictment, including but not limited to the related criminal investigation, *United States of America v. The Premises and Real Property with All Buildings, Appurtenances, and Improvements, Located at 7405 Morgan Road, et. al.*, 1:19-CV-01157 (EAW) (W.D.N.Y. August 28, 2019), or *United States of America v. Any and All Joint Venture Units*, 1:20-cv-00334 (EAW) (W.D.N.Y. March 20, 2020).

5.  WHEREAS no Defendant named in the Superseding Indictment in the above-captioned proceeding (Dkt. 42) has a direct ownership interest in the Property.

6.  WHEREAS Robert Morgan and Todd Morgan have an indirect interest in the Owner.

7.  WHEREAS a third party not subject to the allegations of the Superseding Indictment has an indirect, minority ownership interest in the Property (the "Minority Owner").

8.  WHEREAS, all advances made by the Receivership Entities (as defined in the Order Appointing Receiver (Dkt. 39) and clarified by the Stipulation and Order (Dkt. 49) in *Securities and Exchange Commission v. Morgan, et al*., 19-CIV-661-EAW (the "SEC Action")) for the benefit of the Property have been repaid.

9.  WHEREAS, the Parties agree to effectuate the transactions as set forth in the Purchase and Sale agreement and Profit Sharing Agreement entered into on April 20, 2020 entered into the by and between Owner and Joseph Alloco, or an entity owned and controlled by him ("Purchaser") ("the Sale").

10. WHEREAS per the Purchase and Sale Agreement, upon the closing of the Sale, the Purchaser shall assume the debt and outstanding obligations, in an amount not to exceed

$32,000,000.00, secured by the loan agreements (collectively, the "Mortgage") between ESL Federal Credit Union (the "Lender") to the Owner, which Mortgage shall be restated, modified and amended by agreement between Lender and Purchaser, as borrower, to secure a first mortgage lien in an amount not to exceed $33,500,000.00 (collectively, the "New Mortgage").  The Purchase and Sale Agreement, the Profit Sharing Agreement, the Profit Sharing Payments, together with and any and all interest in the Property, directly or indirectly, now or hereafter acquired, of the Owner, Robert Morgan, Todd Morgan, and/or their successors, assigns, subsidiaries and affiliated entities, shall be subject and subordinate in all respects to the New Mortgage.

11. WHEREAS per the Purchase and Sale Agreement, upon the closing of the Sale, the Minority Owner shall be paid $1,500,000 in consideration for 100% of his indirect ownership interest in the Property (the "Minority Membership Buyout").

12. WHEREAS the Owner will not receive any proceeds upon the closing of the Sale, except as provided in the Profit Sharing Agreement, subject to this Stipulation, the New Mortgage, and that certain Discounted Payoff Agreement, between Owner, as borrower, and Robert Morgan, Morgan Ellison Heights LLC, The Robert Morgan Limited Partnership III, R. Morgan Management III LLC, collectively, as guarantors (the "DPA").

13. WHEREAS per the Profit Sharing Agreement, upon the closing of the Sale, the Purchaser agrees to share 35% of the net profits of the Property unless and until the Property is sold in a subsequent sale or change of control, and to pay 35% of any net sales proceeds to Owner in the event of any subsequent sale or change of control of the Property (the "Profit Sharing Payments").

14. Upon the closing of the Sale, any and all Profit Sharing Payments due Owner shall be paid by Purchaser directly to Lender, until such time as Profit Sharing Payments totaling the amount of $250,000.00 have been irrevocably received by Lender (the "DPA Profit Sharing Payments"), all as more particularly set forth in the DPA.

15.  Upon Lender's receipt of payment in full of the DPA Profit Sharing Payments, and during the pendency of forfeiture allegations in the Superseding Indictment related to the Ellison Heights Net Proceeds (as defined below) or until further stipulation by the Parties, any and all subsequent Profit Sharing Payments to Owner shall, subject to the New Mortgage as provided below, be paid by Purchaser directly to a third-party escrow account ("Escrow Agent") agreed to by the Parties (the "Ellison Heights Net Proceeds"). The Court must approve fees due and owing to the holder of the escrow account, except as otherwise stipulated by the Parties.  Notwithstanding the foregoing, any and all reasonable and customary costs and expenses relating to the Sale may be paid from any net Sale proceeds.

16. Except to the extent of the DPA Profit Sharing Payments, the Lender shall have no rights claim or interest, under the New Mortgage, the DPA, any guaranties or otherwise, in the Ellison Heights Net Proceeds held in the third-party escrow account by the Escrow Agent at the time of an event of default under the New Mortgage.  In the event Lender declares an event of default under the New Mortgage, it may exercise its rights to direct Purchaser or any other party in control of the Property to suspend the Profit Sharing Payments for so long as the event of default is not cured.

17. Upon the Sale, the United States of America shall dismiss the forfeiture allegations in the Superseding Indictment against the Property and hereby agrees to file on the docket a motion

to strike all forfeiture allegations relating to the Property from the Superseding Indictment; and may add as a Defendant in its stead the Ellison Heights Net Proceeds.

18. Upon the Sale, the United States shall file a termination of the Notice of Pendency currently filed against the Property.

19. The United States Attorney's Office for the Western District of New York and/or any of the federal agencies participating in the current criminal investigation related to the Superseding Indictment hereby agrees that, upon the Sale, they will not pursue as part of its criminal or civil forfeiture claims, and specifically and expressly waives any claim to the forfeiture of the premises, buildings, appurtenances, improvements, undistributed profits, and real property of the Property, and to the Minority Buyout Payment, and to any substitute property up to the value of the Property, except for the Ellison Heights Net Proceeds as provided for herein.

20. Nothing in this Stipulation shall limit any Party's or any other claimant or potential claimant's right to contest forfeiture of the Ellison Heights Net Proceeds or their respective portion thereof.

21.  Nothing in this Stipulation shall be construed as an admission of any allegation in the Superseding Indictment or any other indictment, information, or complaint.


Dated:  July 29, 2020


By:    JAMES P. KENNEDY, JR.
       United States Attorney

       *S/Mary Clare Kane*
       Mary Clare Kane
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202

5

GIBSON DUNN & CRUTCHER, LLP

By:    *S/Joel M. Cohen*
        Joel M. Cohen
        *Attorneys for Robert C. Morgan*
        200 Park Avenue
        New York, New York 10166


ROTHENBERG LAW

By:    *S/David Rothenberg*
        David Rothenberg
        *Attorneys for Todd Morgan*
        Times Square Building
        45 Exchange Boulevard, Suite 800
        Rochester, New York 14614


HARRIS BEACH PLLC

By:    *S/Jordan C. Alaimo*
        Jordan C. Alaimo
        *Attorneys for Ellison Heights LLC*
        99 Garnsey Road
        Pittsford, New York 14534

SO ORDERED:

Dated: Rochester, New York
        July 30, 2020

Hon. Elizabeth A. Wolford
United States District Judge

6

## EXHIBIT A

Legal Description

ALL THAT TRACT OR PARCEL OF LAND, containing 10.3351 acres of land, more or less, situate in Town Lot No. 61 in Township 13, Range 4 of the Phelps & Gorham Purchase in the Town of Penfield, County of Monroe and State of New York, being known as Lot R-1 as shown on the drawing entitled "Ellison Heights, Resubdivision Plat of Lot 1 and Blocks A, B & C," prepared by BME Associates and filed in the Monroe County Clerk's Office in Liber 326 of Maps at page 99.

Said Lot R-1 is of the size and dimensions as shown on said map.

PROPERTY ADDRESS:        1200-A Penfield Road, Town of Penfield, New York

Subject to all covenants, easements and restrictions of record affecting said premises, specifically including the ingress and egress easement reserved in a Deed dated April 20, 2006 and recorded in the Monroe County Clerk's Office in on June 19, 2007 in Liber 10476 of Deeds, page 337, as amended by Amendment to Easement dated July 19, 2017 and recorded in the Monroe County Clerk's Office on July 20, 2017 in Liber 11891 of Deeds, page 457.

Being and intending to convey the same premises described in the Deed to the Grantor dated December 23, 2013 and recorded in the Monroe County Clerk's Office on December 24, 2013 in Liber 11343 of Deeds, at Page 350.