UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

FRANK GIACOBBE, TODD MORGAN,
ROBERT MORGAN, and MICHAEL
TREMITI,

Defendants.

**DECISION AND ORDER**

1:18-CR-00108 EAW

Familiarity with the facts and procedural posture of the above-captioned matter are assumed for purposes of the instant Decision and Order.

Before the Court is a submission from the United States Attorney's Office in response to the Court's Order entered at Docket 613, signed by both the First Assistant United States Attorney and the Criminal Chief on behalf of United States Attorney Trini Ross. The government has sought leave to file this submission *ex parte* and under seal. (Dkt. 617). Defendants Robert Morgan and Michael Tremiti oppose this request. (Dkt. 619; Dkt. 620).[1] Additionally, the Court has received a request from the *Democrat & Chronicle* requesting that the submission be unsealed or, in the alternative, that the Court require the public filing of "papers that would explain the government's rationale behind its sealing request." (Dkt. 622). Having given the matter careful consideration, the Court finds that the submission should be filed *ex parte* and under seal and grants the

---

[1]    Defendant Todd Morgan has submitted a response from his attorney taking no position on the request. (Dkt. 621).

government's motion (Dkt. 617), for the reasons that follow.  Furthermore, as discussed below, the Court will not take further steps *sua sponte* to investigate the allegations that were the subject of the planned evidentiary hearing related to the motions for reconsideration in this matter.

## SEALING REQUEST

Transparency and public access to judicial proceedings are of paramount importance.  However, those interests are not without reasonable and narrowly tailored limits.  "Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution."  *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020).  When considering a motion to seal, the Court will generally engage in a three-step process regarding the applicability of this presumptive right of access.  First, the Court "determines whether the record at issue is a 'judicial document'—a document to which the presumption of public access attaches."  *Id.* at 59. Second, "if the record sought is determined to be a judicial document, the court proceeds to 'determine the weight of the presumption of access' to that document."  *Id*. (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)).  Third, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access."  *Id*.

As to the first step, a judicial document is an item that is filed with the Court and "relevant to the performance of the judicial function and useful in the judicial process[.]"

*United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).  That standard is satisfied here, and so the Court must proceed with the inquiry.

At the second stage, the Court finds that the presumption of public access is low. The Second Circuit has explained that the presumption of public access is at its peak where "applied to documents that play a central role in determining litigants' substantive rights— conduct at the heart of Article III." *Mirlis*, 952 F.3d at 60 (quotation omitted).  Conversely, "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); *see also Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (where the court is exercising supervisory authority that is "ancillary to the court's core role in adjudicating a case," the presumption of public access is accordingly lower).

Here, the submission at issue is unrelated to the Court's resolution of the parties' substantive rights but is instead addressed to the collateral matter of the Court's inherent authority to supervise the conduct of members of its bar.  (*See* Dkt. 613 at 2).  Indeed, the submission was prompted not by any action taken by the parties, but by the Court's *sua sponte* Order.  Under the circumstances, the common law presumption of public access is not strong.  *See, e.g., In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-1570 (GBD)(SN), 2021 WL 5495180, at *1 (S.D.N.Y. Nov. 23, 2021) (presumption of public access was low as to filing that "was ordered only to explore a collateral fact in [the] Court's investigation of the breach of the protective orders in [the] matter").

Defendant Robert Morgan cites *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) in arguing that the presumption of public access is high.  (*See* Dkt. 619 at 3).  This citation is inapposite.  The document at issue in *Bernstein* was the complaint itself, which the Second Circuit explained "is among the most likely to affect judicial proceedings.  It is the complaint that invokes the powers of the court, states the causes of action, and prays for relief."  *Id*. at 142.  Similarly, in *United States v. Nojay*, No. 6:16-mj-00600, Dkt. 17 (W.D.N.Y. Dec. 19, 2016), which defendant Michael Tremiti quotes from at length in his opposition (*see* Dkt. 620), the sealing request implicated the criminal complaint itself.  Here, the document at issue will have no impact on the resolution of the criminal proceedings against any defendant.[2]

The Court notes that "[i]n addition to the common law right of access, it is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).  The Second Circuit has "articulated two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents."  *Bernstein*, 814 F.3d at 141 (quotation omitted).  The first of these approaches "considers 'experience and logic': that is, 'whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning

---

[2]     In the event that the sentencings do not go forward as planned (for instance, if the Court declines to accept the plea agreements), this analysis could change.  Should that occur, the Court will revisit its sealing determination.

of the particular process in question.'" *Id.* (quoting *Lugosch*, 435 F.3d at 121).  "The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings."  *Id.* (citation omitted).

The Court finds the first of these approaches more appropriate here and again concludes that while there is a presumption of access, it is not strong.  The Court notes that documents regarding alleged attorney misconduct are routinely maintained under seal unless they are ultimately substantiated and some form of public discipline is ordered.  For example, Second Circuit Local Rule 46.2, which governs attorney discipline, provides that, with some exceptions, "[a]ll matters referred to, all proceedings conducted by, and all records possessed by" the Second Circuit Committee on Admissions and Grievances shall "remain confidential[.]"  2d Cir. L. R. 46.2(b)(6).  Moreover, it is not at all clear to the Court that public access into the investigatory phases of potential attorney misconduct would enhance the functioning of the process.

The Court thus turns finally to the question of whether there are countervailing interests that oppose the relatively weak presumption of public access and finds that there are and any right to access is outweighed by those interests.  Disclosing all of those interests would necessarily reveal the details of the government's submissions and thus defeat, at least in part, the whole purpose of sealing.  However, based on its careful review of the relevant circumstances and balancing of the interests at issue, the Court is satisfied that sealing is warranted in order to allow the interests documented in the government's sealing motion to be protected, including the robust and candid functioning of the Department of

Justice's internal processes.   While under certain circumstances it might be more appropriate to articulate those interests in greater detail to the public, under these circumstances where the presumption of public access is not strong, the Court concludes that any more detailed disclosure of those interests is not warranted.[3]

## FURTHER INVESTIGATION

After giving a great deal of thought to the matter, the Court declines to conduct any further investigation *sua sponte* as to whether attorney misconduct occurred in this case. Consistent with the terms of their plea agreements, defendants Robert Morgan, Todd Morgan, Michael Tremiti, and Frank Giacobbe have now all withdrawn the pending motions for reconsideration that were filed in this matter, seeking to have the Court dismiss the indictment with prejudice.   (*See* Dkt. 505 (Giacobbe), Dkt. 506 (Todd Morgan), Dkt. 507 (Robert Morgan), Dkt. 509 (Tremiti)).   The withdrawal of the motions, of course, does not change the fact that extremely serious allegations have been leveled against members of the United States Attorney's Office involved in the handling of this matter, and that the Court determined that there was a sufficient basis to those allegations to justify an evidentiary hearing in connection with the defendants' now withdrawn motions for reconsideration.   Indeed, the Court gave the government an opportunity to attempt to address those allegations through written submissions, including affidavits, and oral

---

[3]      As a result, the Court further finds that the papers submitted by the government in support of its motion to seal should not be filed on the public docket.   These papers contain a substantial portion of the information set forth in the government's submission of July 1, 2022, and disclosure would have the same negative impacts.

arguments before the undersigned, and ultimately concluded that the government had failed to resolve the concerns and an evidentiary hearing was necessary.

The Court ordered a hearing because there was credible evidence in the record supporting the defense position that, in fact, there were intentional misrepresentations by the government to the Court. The Court does not know how that evidentiary hearing would have been resolved. There is no question that inaccurate statements were made by the government as part of these proceedings—to both Judge Schroeder and the undersigned. There is also no question that omissions were made by the government when it discussed the status of the discovery in this case during appearances before the undersigned and Judge Schroeder. What the Court does not know is the level of culpability that should be attributed to the government for making those inaccurate statements and omissions—were they intentional, reckless, grossly negligent, or simply negligent?

To be clear, there has not been any finding that representatives of the United States intentionally misrepresented information to the undersigned or Judge Schroeder—but similarly, there are unresolved facts in the record as to whether or not they did, which is not an optimal situation. The Court expects all attorneys who appear before it to conduct themselves with the utmost candor, but that expectation is particularly keen when it comes to attorneys representing the United States of America. As guardians of the public interest, government attorneys have a "heightened ethical obligation that extends beyond just representing the narrow interests of [their] most direct client"—they "also must endeavor to do justice." *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 600 (E.D.N.Y. 2017) (internal quotation marks omitted).

- 7 -

On the other hand, while the Court unquestionably has the power to investigate allegations of misconduct by attorneys who appear before it, it is also important to keep in mind that "a federal court is not an investigative body charged with government oversight," *State v. United States Dep't of Commerce*, 461 F. Supp. 3d 80, 91 (S.D.N.Y. 2020), particularly oversight of a different branch of government like the Department of Justice which has its own resources for ensuring its attorneys fulfill their ethical obligations. Significant resources have been expended on this case—not only by the parties, but also by the Court—and the reality is that devoting additional judicial resources to pursue an inquiry into the issues that were to be explored at the scheduled evidentiary hearing would come at the expense of time that could and should be devoted to the hundreds of other cases pending before the undersigned.  Moreover, while by no means insurmountable, there are practical hurdles to the Court going forward on its own with such an inquiry, which was originally intended to be conducted through the adversarial system so as to test the merits of the allegations.

Most importantly, based on the sealed submission from the government, the Court is confident that United States Attorney Ross and her leadership team are aware of and appreciate the seriousness of the allegations that have been made in this case.  Moreover, the Court has every expectation that the Department of Justice will take the necessary steps to investigate the allegations and ensure that any necessary remedial actions are taken to address those issues.  Accordingly, under the circumstances, the Court concludes that it would not be a prudent exercise of its discretion to investigate on its own the allegations that were to be the subject of the evidentiary hearing in this case.  *Cf. United States v.*

- 8 -

*Nejad*, 487 F. Supp. 3d 206, 208 (S.D.N.Y. 2020) (finding "further response" by the court required where prosecutorial misconduct had been definitively shown and yet the United States Attorney's Office for the Southern District of New York refused to take appropriate action).

The Court will mark all pending motions for reconsideration as withdrawn consistent with the plea agreements.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       July 20, 2022
             Rochester, New York