UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

UNITED STATES OF AMERICA,

        v.

FRANK GIACOBBE, TODD MORGAN,
ROBERT MORGAN, and MICHAEL
TREMITI,

        Defendants.

**DECISION AND ORDER**

1:18-CR-00108 EAW

─────────────────────────────

# BACKGROUND

Familiarity with the facts and procedural posture of the above-captioned matter are assumed for purposes of the instant Decision and Order.

On April 22, 2022, the Court entered an Order explaining that there remained "unresolved facts in the record" as to whether "representatives of the United States intentionally misrepresented information" during the course of this criminal action. (Dkt. 613 at 3). The Court indicated that it was considering whether it should conduct an independent inquiry to help it determine whether to exercise its inherent authority to supervise the members of its bar. (*Id*. at 2-3). Finally, the Court stated that if the government "[took] the position that no further inquiry by the Court into these matters is warranted, including potentially because of plans the government has to pursue the issues on its own internally," it was required to file a brief setting for the basis for that position by no later than July 1, 2022. (*Id*. at 3).

On June 27, 2022, the government requested permission to submit the ordered filing under seal. (Dkt. 617). On July 13, 2022, a reporter on behalf of Gannett Media Corp. d/b/a the Democrat & Chronicle ("Gannett") sent the Court an email opposing the government's sealing request. (Dkt. 622). Notwithstanding the informal nature of Gannett's opposition, the Court accepted, docketed, and considered it.[1] On July 25, 2022, this Court entered a Decision and Order (Dkt. 625) (the "Sealing Order") in which it granted the government's request for sealing and further determined that it would not conduct a *sua sponte* inquiry into the conduct of the government attorneys in this case. Pursuant to the Sealing Order, the government's filing of July 1, 2022, is currently sealed. (Dkt. 624) (the "Sealed Submission").[2]

Nearly a month later, Gannett—now represented by counsel—filed the instant motion to intervene and for reconsideration of the Sealing Order. (Dkt. 627). Gannett purported to proceed on an expedited basis by submitting a proposed Order to Show Cause, in contravention of this Court's Local Rules of Criminal Procedure, which require a party seeking to shorten the Court's ordinary motion briefing schedule to make a separate motion for an expedited hearing. (Dkt. 628). The Court accordingly issued a standard briefing

---

[1] While motivated by an effort to be accommodating to the reporter, in hindsight this was a mistake. The email from the reporter was not nearly as robust as the subsequent motion for reconsideration filed by Gannett's counsel, and it plainly would have been preferable to have the legal arguments now advanced by Gannett prior to rendering the initial determination. Gannett is advised that any future such requests in this or any other case should be made in accordance with the applicable rules of procedure.

[2] The Court also placed under seal the government's affidavit submitted in support of its motion to seal. (Dkt. 623).

schedule (*id*.), which was subsequently extended on the consent of the government and Gannett (Dkt. 632; Dkt. 633).

The government filed its response to Gannett's motion on September 8, 2022, along with a motion for a protective order. (Dkt. 639; Dkt. 640). Gannett filed a combined reply in further support of its motion and in opposition to the government's motion for a protective order on September 15, 2022. (Dkt. 644).

## GANNETT'S REQUEST FOR INTERVENTION

Gannett asks the Court for "formal intervenor status." (Dkt. 627 at 7). The government does not oppose this request (*see* Dkt. 639 at 5 n.1), and it is hereby granted. *See generally United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008).

## THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

The government moves for a protective order "in an effort to help illuminate [Gannett's] understanding of the Court's July 20, 2022, Decision and Order[.]" (Dkt. 639 at 1). More specifically, the government proposes that the Court enter a protective order whereby the government can provide to Gannett a redacted copy of the Sealed Submission, but Gannett is prohibited from, among other things, disclosing (*i.e.* reporting on) the information contained therein. (*See* Dkt. 640 at 1-2). The government has offered no authority in support of its request, and the Court has not found any in its own research suggesting that this is an appropriate manner in which to proceed.

Moreover, the procedure suggested by the government appears inconsistent with the purposes of ordering sealing. In other words, if the information in the Sealed Submission has properly been withheld from public view, there is no basis for it to be shown, in part

or in full, to Gannett. If, on the other hand, it can be shown to Gannett without injuring the interests that supported entry of the Sealing Order, there is no basis on the instant record for the Court to conclude that it cannot be made more generally public. The government's motion for a protective order (Dkt. 640) is thus denied.

## REQUEST FOR RECONSIDERATION

Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions "have traditionally been allowed within the Second Circuit." *United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006). District courts "have applied the applicable civil standard to such motions in criminal cases." *United States v. Larson*, No. 07-CR-304S, 2013 WL 6196292, at *2 (W.D.N.Y. Nov. 27, 2013). "The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Common grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Natl Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Boyde v. Osborne,* No. 10-CV-6651, 2013 WL 6662862, at *1 (W.D.N.Y. Dec. 17, 2013) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)). The decision to grant or deny a motion

for reconsideration is within "the sound discretion of the district court. . . ." *Aczel v. Labonia,* 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

At the outset, the Court must pause to remark on the surprising nature of the tone of Gannett's motion for reconsideration. The submission is replete with unnecessary, unhelpful, and over-the-top rhetoric. Zealous advocacy is, of course, a cornerstone of our system of justice, but "[z]ealousness does not entail being abusive or using inflammatory language." *Gortat v. Capala Bros., Inc.*, No. 07 CV 3629 (ILG), 2009 WL 10706564, at *14 (E.D.N.Y. June 3, 2009); *see also* Sandra Day O'Connor, *Professionalism*, 78 Or. L. Rev. 385, 389 (1999) ("[I]ncivility disserves the client because it wastes time and energy: time that is billed at hundreds of dollars an hour, and energy that is better spent working on the client's case than working over the opponent."). Vitriolic accusations of "desperation" (*see* Dkt. 644 at 7), among other things, demean the author more than the target.

Gannett's reconsideration motion also makes extensive legal arguments that could have been and should have been submitted when the Court initially considered the motion to seal. It is well-established that a motion for reconsideration is not a vehicle "to re-argue issues that have already been decided, present new theories or arguments that could have been raised earlier, seek a new hearing on the merits, or to otherwise take a second bite at the apple." *Dejesus v. Malloy*, 582 F. Supp. 3d 82, 85 (W.D.N.Y. 2022) (quotation and original alteration omitted). Nonetheless, given the importance of the interests at stake, the Court has considered the newly presented arguments.

Turing to the merits, Gannett's reconsideration request is premised on a fundamental misapprehension of the procedural and factual background of the Court's Sealing Order and conclusions of law, as well as more generally the record in this case. As a result, Gannett's arguments are untethered from the circumstances of the instant matter or the cited authority. The Court begins with Gannett's assertion that this Court erred in denying its procedurally improper request for expedited consideration of its motion. (*See id*. at 18-19). Gannett argues that its request for reconsideration "implicates fundamental public access issues separate and distinct from the merits of the underlying criminal proceeding," and is thus "subject to controlling First Amendment procedures rather than the Court's Local Rules of Criminal Procedure." (*Id*.). Gannett then cites several cases, none of which stand for the proposition that assertion of a First Amendment claim exempts a party from compliance with the applicable procedural rules. Gannett makes much of the fact that "the collateral order doctrine authorizes media intervenors to appeal directly from interlocutory orders on the ground that such intervention motions may be 'treated as a separate civil case in which the ruling would have been final.'" (*Id*. at 19 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 117 (2d Cir. 2006)). It is unclear to the Court how Gannett believes this case law supports its position. This Court's Local Rules of Civil Procedure, like its Local Rules of Criminal Procedure, require a party seeking expedited consideration to file a separate motion for such relief. L. R. Civ. P. 7(d)(1). And nothing in *Lugosch* (or any of the other cases cited by Gannett) indicates that the prompt consideration due to motions seeking access to sealed documents translates to a free pass to disregard a court's clear and properly adopted local rules. *See* Fed. R. Civ. P. 83(a)(1).

- 6 -

Gannett cannot cloak its failure to abide by the Court's rules with the First Amendment. Nonetheless, again because of the interests at stake, the Court has made every effort to expedite its consideration of the motion.

As to Gannett's criticism of the Sealing Order, its arguments flow from its assumption that the Sealed Submission contains evidence of prosecutorial misconduct. (*See, e.g.,* Dkt. 627 at 7 (asserting that the Sealing Order "removed from public scrutiny . . . extremely serious allegations of prosecutorial misconduct in this case, including credible evidence of intentional misrepresentations by the government to the Court" (internal quotation marks and citation omitted)), 8 ("Because of the Sealing Order, we now know that the prosecution was permeated by the systematic mishandling and concealment of significant evidence that perhaps would have led to dismissal of the indictments. Yet the public does not have access to this evidence."); Dkt. 644 at 9 ("It is imperative that the public know the extent to which the U.S. Attorney's office failed to observe fundamental constitutional and ethical requirements in the course of discovery[.]")). The Court wishes to be extremely clear on this point: Gannett's assumption is dead wrong. No evidence of prosecutorial misconduct is set forth in the Sealed Submission. To the contrary, the evidence of potential prosecutorial misconduct that exists in this case is on the public docket, available for review by Gannett or anyone else who is interested in the matter. Indeed, this Court held a public hearing on January 25, 2022, at which it set forth in detail the evidence in the record that caused it to question whether prosecutorial conduct might have occurred. (*See* Dkt. 550 at 12-23). The transcript of that hearing is available on the public docket. (*Id*.). Even Gannett has acknowledged the robust public record on this issue

when its reporter submitted the initial email to the Court, which acknowledged that "given the extensive paperwork already filed publicly about the government's missteps with the prosecution—and the question of whether some were intentional—it is difficult to imagine there is much that has not already had some public airing."  (Dkt. 622).

Instead, the Sealed Submission addresses the narrow issue raised by the Court in its Order dated April 22, 2022—namely, whether the government intended to take internal steps to uncover and remedy any prosecutorial misconduct that might have occurred, such that a *sua sponte* exercise of the Court's collateral supervisory authority over the prosecutorial team was not necessary.  In other words, the Sealed Submission is addressed to a procedural inquiry.

Gannett asserts in its reply that it cannot possibly know what the Sealed Submission contains, and inexplicably accuses the government of claiming "with a nod and a wink to the Court" that the Sealed Submission "does not contain evidence of prosecutorial misconduct."  (Dkt. 644 at 8).  To the extent Gannett is implying that the Court and the government are collaborating to coverup prosecutorial misconduct, anyone with even a moderate understanding of the record in this case would know that the inference is patently absurd.  It defies logic to suggest that this Court—which has been public and vocal in its criticism of the government's conduct in this case—would *sua sponte* raise the possibility of conducting a further inquiry (which, of course, it was under no obligation whatsoever to do), only to subsequently bury evidence of prosecutorial misconduct.  Moreover, the nature of the Sealed Submission is easily gleaned from the docket in this matter, which makes clear that what the Court requested, and what the government provided, was information

about internal steps the government intended to take to remedy what went wrong in this case.

This factual error regarding the content of the Sealed Submission permeates Gannett's reconsideration motion and undermines its legal arguments. Gannett argues that "[t]he sealing of judicial documents in this case violates the principles of transparency and public accountability" because if the Sealed Submission is not made publicly available, its "readers will necessarily have concerns over the gravity of the government's discovery transgressions, and whether it led the government to capitulate to favorable plea deals for the defendants." (Dkt. 627 at 13). However, the Sealed Submission contains no non-public information whatsoever about the discovery in this matter, or any explanation as to the motives of the government in negotiating the plea resolutions in this case.

Gannett also argues that the Court erred in analogizing the instant matter to attorney disciplinary proceedings, stating that it "did not entail solely an inquiry on possible sanctions." (Dkt. 627 at 15). However, the Court's Order of April 22, 2022, was clear that this is precisely what was at issue—the Court was considering whether it should sanction any members of the prosecutorial team, but observed that the factual record that would potentially support such an action remained unresolved. (Dkt. 613 at 2-3). In other words, had the Court decided to conduct a further inquiry, and had that inquiry uncovered evidence of prosecutorial misconduct, the outcome would have been disciplinary action by the Court as to the involved attorneys—it would not have impacted the sentencing of any defendant in this matter.

Gannett also asserts that the Sealing Order "ignores that a court performs the judicial function not only when it rules on motions currently before it, but also when properly exercising its inherent supervisory powers" (Dkt. 672 at 15 (quotation, alteration, and emphasis omitted)). This is a curious assertion in light of the fact that the Sealing Order explicitly states that the Sealed Submission is "relevant to the performance of the judicial function and useful in the judicial process." (Dkt. 625 at 2 (quotation and alteration omitted)). Gannett erroneously conflates the *judicial function*—which includes the exercise of inherent supervisory powers—with the *Article III function*—which is the adjudication of the case. *See Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) ("Although a court's authority to oversee discovery and control the evidence introduced at trial surely constitutes an exercise of judicial power, we note that this authority is ancillary to the court's core role in adjudicating a case."). In other words, the Sealed Submission had no influence on or even relevance to the Court's decision making with respect to the criminal prosecution. Rather, it informed the Court's decision as to whether to exercise its inherent supervisory powers to conduct a further inquiry with respect to potential attorney misconduct.

Again misstating the record, Gannett claims that the Court "walked back its determination that" an evidentiary hearing in this matter was necessary. (Dkt. 644 at 9). The evidentiary hearing that was scheduled and then cancelled in this matter had been requested by certain defendants and was aimed specifically at resolving issues raised by their then-pending motions for reconsideration of this Court's decision dismissing the charges against them on speedy trial grounds without prejudice. When those defendants

moved to withdraw their pending motions for reconsideration, the legal basis for the scheduled evidentiary hearing dissipated, and the Court immediately adjourned it. (*See* Dkt. 606). The Court then considered—of its own volition—whether a different, non-adversarial hearing should be scheduled, to aid the Court in determining whether attorney discipline was necessary in this case. (*See* Dkt. 613). At no time was the question before the Court whether it should continue with the previously scheduled evidentiary hearing; it would have been nonsensical for the Court to do so in light of the matter's procedural posture.

In sum, Gannett fundamentally misapprehends the procedural and factual background of the Sealing Order, as well as the record as a whole, and has not demonstrated that reconsideration is warranted so that the Court should simply unseal the Sealed Submission. However, notwithstanding the previously enumerated flaws in Gannett's motion for reconsideration, the Court takes the public's right of access to judicial proceedings and documents extremely seriously. (*See* Sealing Order at 2 (explaining that "[t]ransparency and public access to judicial proceedings are of paramount importance")). In reviewing this matter, the Court has taken another hard look at the Sealed Submission, as well as the underlying motion to seal (collectively, the "Sealed Documents"). Additionally, the Court has reconsidered whether the intensity of the public interest in this criminal prosecution should have been considered when assessing the strength of the common law presumption of public access. No party had articulated that argument when the motion was first presented to the Court, and even now it is not at all clear that Gannett is precisely advocating that position. But the Court has considered it and concludes that

the public interest in the criminal prosecution does inform the strength of the common law presumption of public access. While the Court stands by its assessment of the presumption of public access being lower than as to a judicial document central to determining the parties' substantive rights—because the Sealed Submission instead addressed the collateral matter of the Court's inherent authority to supervise the conduct of members of its bar—especially when considering the public interest in this criminal prosecution and the publicity that it generated (including through the government's own press releases), the Court concludes that there is at least a higher presumption of public access than initially recognized, especially for the internal steps that the United States Attorney's Office for the Western District of New York ("USAO-WDNY") intends to take to ensure the type of discovery failures that occurred in this case do not reoccur. With respect to any internal efforts by the Department of Justice to address potential attorney misconduct, the Court is not persuaded that the common law presumption of public access is different than was originally assessed—even considering the publicity that was generated in this case—and furthermore, the Court continues to conclude that under a First Amendment analysis, attorney disciplinary records have not historically been open to the press and general public, and public access does not play any role in the functioning of that process. Again, there are no factual details in the Sealed Submission about attorney misconduct, but rather it addresses the process for addressing those issues internally within the Department of Justice and the status of any such efforts.

In view of the above, the Court has also reassessed whether there are countervailing interests that oppose the common law presumption of public access, and further whether

with any qualified First Amendment right of access, sealing is essential to preserve higher values and is narrowly tailored to serve that interest. On the status of any review by the Department of Justice of attorney misconduct issues, the Court persists with its conclusion that any such information should be sealed. The Court continues to be of the view that sealing is necessary to protect "the robust and candid functioning of the Department of Justice's internal processes." (*See* Dkt. 625 at 5-6). Moreover, privacy concerns override any rights of public access with respect to this information—from either a common law or constitutional perspective. But again, as repeatedly noted herein, the Sealed Submission does not contain any factual details about attorney misconduct, let alone any findings of attorney misconduct—which the Court has taken pains to emphasize have not been made in this case. (*See* Dkt. 625 at 7).

However, with respect to the general internal processes available within the Department of Justice to conduct such a review, the Sealed Submission provides sufficiently general information so as not to interfere with the underlying processes that are in place to address issues of potential attorney misconduct. Thus, the Court concludes that that information should be unsealed.

Additionally, with respect to the information contained in the Sealed Submission detailing the steps that have been taken by the USAO-WDNY to address the discovery failures in this case, the Court has reconsidered its prior sealing determination and no longer concludes that sealing can be justified. The one exception is where the Sealed Submission contains particularization of individuals involved in those efforts, which the Court concludes should be sealed as work product and for privacy reasons.

Finally, as to the portions which it intends to unseal, the Court finds it appropriate to temporarily stay its determination, to afford the government an opportunity to seek emergency appellate review should it wish to do so. The details of that stay are set forth below.

## CONCLUSION

For the reasons set forth above, the Court denies the government's motion for a protective order (Dkt. 640) and grants in part and denies in part Gannett's motion to intervene and for reconsideration (Dkt. 627). Gannett is formally recognized as an intervenor. The Court has identified portions of the Sealed Documents (Dkt. 623; Dkt. 624) that will be unsealed. Contemporaneously with the filing of the instant Decision and Order, the Court will place on the docket under seal a version of the Sealed Documents in which the Court has made what it views as the appropriate redactions. The Court will also provide a copy of this version of the Sealed Documents to the government, but will not make it available to Gannett or the public until September 23, 2022. At 10:00 a.m. on September 23, 2022, the Court will lift the seal on the redacted version of the Sealed Documents unless otherwise ordered not to do so by a reviewing court.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   September 19, 2022
         Rochester, New York